# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Philadelphia Yearly Meeting of the Religious Society of Friends**, *et al.*,<br><br>                    Plaintiffs,<br>v.<br><br>**U.S. Department of Homeland Security,** *et al.*,<br><br>                    Defendants. | Civil Case No. 8:25-cv-243-TDC |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS**
***AMICUS CURAIE* IN SUPPORT OF DEFENDANTS AND IN**
**OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

## INTEREST OF *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

## INTRODUCTION

On January 21, 2025, Acting Secretary of Homeland Security Benjamin Huffman issued a memorandum titled "Enforcement Actions in or Near Protected Areas" rescinding the October 27, 2021 memo, "Guidelines for Enforcement Actions in or Near Protected Areas" issued by former Secretary Mayorkas. The Mayorkas memo directed Department of Homeland Security ("DHS") officials to refrain from enforcement activity at "protected areas" an expansive category that includes places of worship, primary schools, and hospitals but also recreation centers, social services establishments, universities and trade schools, and "places where there is an ongoing parade, demonstration, or rally." Mayorkas, Memorandum on Guidelines for Enforcement Actions in or Near Protected Areas (Oct. 27, 2021). The January 21, 2025, memorandum ended this policy and directed officers to use their discretion in conducting enforcement activity at protected areas, while also recognizing that subordinate agencies could issue their own directives to "assist officers

---

[1] No counsel for a party authored this brief in whole or in part and no person or entity, other than amicus curiae, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

1

in exercising appropriate enforcement discretion." Huffman, Memorandum on Enforcement Actions in or Near Protected Areas (Jan. 21, 2025). Plaintiffs have filed suit seeking injunctive relief on the basis of the Free Exercise clause of the First amendment and the Religious Freedom Restoration Act ("RFRA").

Plaintiffs' suit is without merit and their claim for injunctive relief should be denied. This policy change is a lawful exercise of DHS's authority to issue guidance helpful in enforcing immigration law. In changing its guidance towards protected areas, DHS has not substantially interfered with Plaintiffs' right to association under the Free Exercise Clause of the First Amendment, nor has it substantially burdened Plaintiffs' religious exercise under the Religious Freedom Restoration Act.

## ARGUMENT

**I.   Legal Standards for a preliminary injunction and a temporary restraining order**

A preliminary injunction and a temporary restraining order ("TRO") are both extraordinary legal remedies that are only granted when the requesting party demonstrates a need for such relief. A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without such preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The burden of proof rests with the movant, who must demonstrate a substantial likelihood of prevailing on the underlying claim, and that, absent the requested relief, the movant will suffer irreparable harm that is both imminent and not compensable through monetary damages. *Id.* at 22. Failure to succeed on any of these factors is a basis for denying both a preliminary injunction and a TRO. *Vitkus v. Blinken,* 79 F.4th 352, 361 (4th Cir. 2023*).* Because Plaintiffs cannot meet their burden of demonstrating that Defendants have

burdened their right to free exercise of their religious beliefs, they cannot succeed on the merits of their claims. Also, the balance of equities and the public interest both weigh in favor of allowing DHS to enforce immigration laws efficiently.

## II. Plaintiffs cannot satisfy the requirements for a preliminary injunction or a temporary restraining order

### A. *Plaintiffs cannot demonstrate that Defendant has substantially interfered with their right to exercise their religious beliefs under the First Amendment.*

To prevail in a claim under the Free Exercise Clause of the First Amendment, a party must first demonstrate that a government action either compels the party to act in a manner contrary to its sincerely held religious beliefs or otherwise significantly interferes with its religious practices. A law or policy must "burden religious exercise" to trigger Free Exercise protections. *Mahmoud v. McKnight*, 69 F.4th 535, 545 (4th Cir. 2023). This means that the government action must coerce individuals to change or violate their religious beliefs. *Id.*

Plaintiffs cannot satisfy their burden, because DHS's policy does not coerce Plaintiffs to alter their religious beliefs or practices, nor does it significantly interfere with Plaintiffs' ability to worship. Plaintiffs argue that DHS's policy allowing enforcement activity at or near protected areas interferes with their religious rights by deterring attendance at worship, ministry, and other communal events. Am. Compl. at 15, 20. Specifically, they claim that the threat of enforcement discourages attendance, particularly among immigrant congregants, thereby reducing religious diversity and, in turn, limiting access to God. *Id.*

The argument that the threat of enforcement reduces the diversity of worshippers at Quaker meetings fails to establish causation between DHS's change in policy and the burden Plaintiffs allege they suffer. Concurrently with that change of policy, DHS has announced that it will enforce immigration laws much more aggressively than before, and Plaintiffs fail to show that this general

3

increase in enforcement will not account for the feared reduction in religious diversity at their meetings. After all, if an illegal alien congregant is detained by DHS at a public place or in a traffic stop, and then deported, the same reduction of religious diversity will take place—there will be one less congregant at a given religious service or communal event. Plaintiffs therefore cannot establish that DHS's modification of the protected areas policy, rather than its general policy of vigorous enforcement, will cause them an injury.

Even if DHS has burdened Plaintiffs' exercise (according to their own articulated view of what constitutes a burden) a neutral, generally applicable law that burdens religion is subject only to rational basis review, unless it also infringes on another constitutional right or targets religion specifically. *Emp. Div. v. Smith*, 494 U.S. 872, 878 (1990). The Free Exercise Clause protects religious liberty but does not provide absolute immunity from generally applicable laws, particularly those enacted to promote public safety and welfare. *Id.* DHS's policy change is neutral and generally applicable. It facilitates the execution of DHS's statutory responsibility to enforce immigration laws including the Homeland Security Act of 2002, 6 U.S.C. § 101 et seq., and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., which are themselves neutral, generally applicable laws enacted to promote public safety and welfare. As noted previously, "protected areas," as defined in the 2021 Mayorkas Memo, constitute an extremely broad category of public places not limited to places of worship. Mayorkas Memo at 2. By allowing enforcement activity at all places within this broad category, DHS is applying their policy of encouraging officer discretion in a neutral manner.

    B. *Plaintiffs cannot succeed under RFRA.*

Plaintiffs claim under the Religious Freedom Restoration Act ("RFRA") also fails. To support this claim, Plaintiffs argue that "the very possibility of … enforcement actions deters

attendance at houses of worship," not just by illegal aliens but by legal immigrants as well. Am. Compl. at 20. They cite reports by congregants—including legal immigrants and US citizens—at the Sikh Temple in Sacramento and the Cooperative Baptist Community in Oakland expressing fear of attending worship in response to the January 2025 DHS memo. Am. Compl. at 22. This evidence fails to establish causation with respect to legal immigrants and U.S. citizens. An individual's subjective fears of encountering DHS do not mean that DHS, by enforcing its statutory obligations, is somehow deterring that individual from attending a religious service. DHS cannot be held responsible for the subjective fears of persons whom the agency does not seek to detain.

With respect to illegal aliens, Plaintiffs cannot show that their feared absence from meetings will be caused by DHS's modification of the protected areas policy rather than more vigorous enforcement generally. Indeed, since a vigorous policy of enforcement would result—through increased deportations—in the same effect on Plaintiffs' religious exercise as they claim will result from DHS's modification of the protected areas policy, Plaintiffs' argument implies that, under RFRA, they could successfully move to enjoin all vigorous immigration law enforcement. That cannot be the law, and Plaintiffs must be able to explain why their argument does not have this absurd consequence.

To anticipate the only explanation Plaintiffs could give, DHS does, of course, have a compelling interest in enforcing immigration laws, and thus complies with RFRA by achieving that interest through the least restrictive means. The Supreme Court has recognized that the enforcement of immigration laws is a fundamental aspect of national sovereignty and security. *Demore v. Kim*, 538 U.S. 510 (2003); *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19, 2422 (2018). In particular, the government has a compelling interest in achieving operational control of the border, meaning "the prevention of all unlawful entries into the United States, including entries by

5

terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." Secure Fence Act of 2006, Pub. L. No. 109-367, 120 Stat. 2638. Plaintiffs, then, might argue that achieving operational control of the border through vigorous enforcement, including deporting illegal aliens, while keeping the protected areas policy in place, at least with respect to religious services, is a less restrictive means of achieving this compelling governmental interest than including DHS's modification of the protected areas policy in a general policy of vigorous enforcement. Actually, however, the former is not a less restrictive means than the latter, because, whichever course is adopted, illegal aliens will be deported, and thus not able to attend Plaintiffs' services, and Plaintiffs' religious exercise will still be burdened. In other words, only on an assumption that immigration law enforcement, generally, will not markedly improve could Plaintiffs' RFRA claim have merit; only then could maintaining the protected areas policy be the less restrictive—as opposed to merely the more expensive—means. But Plaintiffs have made no effort to show that immigration law enforcement will not markedly improve, and leave them in the same position as they claim DHS's modification of the protected areas policy puts them in.

## III.   Granting injunctive relief would be contrary to the public interest and against the balance of equities.

Granting Plaintiffs' motion for injunctive relief would deny Defendants an efficient tool for enforcing the nation's immigration laws. The substantial rise in illegal immigration since 2021, including an increase in border encounters (*Startling Stats Factsheet: Fiscal Year 2024 Ends with Nearly 3 Million Inadmissible Encounters, 10.8 Million Total Encounters Since FY2021*, House Committee on Homeland Security (Oct. 24, 2024)), and a rise in violent crime by illegal aliens underscores the need for stronger, more efficient immigration law enforcement. *See* Julie Kirchner, *Testimony Before the House Budget Committee on the Fiscal Impact of Illegal Immigration* (May 8, 2024). Hampering DHS by forcing it to continue an expansive, and expensive, protected areas

6

policy would thus be contrary to the public interest, and the harm so caused would not be counterbalanced by the prospect, itself doubtful, that Plaintiffs will continue for long to enjoy the enhancement of their religious exercise that they claim flows to them when the nation's immigration laws are not enforced.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' request for injunctive relief should be denied.

Dated: February 9, 2025                Respectfully submitted,

                                                          s/ Dan Stein
                                                        DANIEL A. STEIN
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 742-1822
dstein@fairus.org

CHRISTOPHER J. HAJEC*
D.C. Bar No. 492551
GABRIEL R. CANAAN*
D.C. Bar No. 90025172
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gcanaan@irli.org

* pending *pro hac vice* admission
Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## **CERTIFICATE OF SERVICE**

I certify that on February 9, 2025, the foregoing was served by filing a copy using the Court's ECF filing system, which will send notice of the filing to all counsel of record.

s/ Dan Stein
DANIEL A. STEIN
