**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PHILADELPHIA YEARLY MEETING OF
THE RELIGIOUS SOCIETY OF FRIENDS,
*et al.*,

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

      Defendants.

Civil Action No. 8:25-cv-00243-TDC

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.      The Huffman Memorandum Is Not Final Agency Action Subject to Review. .................. 1

II.     The Huffman Memorandum Was Not Subject To Notice-And-Comment
        Rulemaking. ...................................................................................................... 8

III.    Immigration Enforcement Is Committed To Agency Discretion By Law........................ 10

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys. v. Gardner*,
  387 U.S. 136 (1967) ............................................................................................. 5

*Adams v. Richardson*,
  480 F.2d 1159 (D.C. Cir. 1973) ......................................................................... 11

*Angelex Ltd. v. United States*,
  723 F.3d 500 (4th Cir. 2013) ....................................................................... 14, 15

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ....................................................................... 7, 8

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
  785 F.3d 710 (D.C. Cir. 2015) ......................................................................... 2, 8

*Casa de Md. v. U.S. DHS*,
  924 F.3d 684 (4th Cir. 2019) ..................................................................... 8, 9, 12

*Cement Kiln Recycling Coal. v. EPA*,
  493 F.3d 207 (D.C. Cir. 2007) ............................................................................ 8

*Chen Zhou Chai v. Carroll*,
  48 F.3d 1331 (4th Cir. 1995) .......................................................................... 7, 9

*City of New York v U.S. Dep't of Def.*,
  913 F.3d 423 (4th Cir. 2019) ........................................................................... 5, 6

*Cohen v. United States*,
  578 F.3d 1 (D.C. Cir. 2009) .............................................................................. 2, 3

*Department of Homeland Security v. Regents of the University of California*,
  591 U.S. 1 (2020) ............................................................................................... 12

*Doe v. Tenenbaum*,
  127 F. Supp. 3d 426 (D. Md. 2012) ................................................................. 2, 5

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*,
  313 F.3d 852 (4th Cir. 2002) ........................................................................... 5, 6

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ...................................................................................... 10, 11

*Holbrook v. Tennessee Valley Authority*,
  48 F.4th 282 (4th Cir. 2022) ........................................................................... 6, 7

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ............................................................................ 6

*Mennonite Church USA v. U.S. DHS*,
  2025 WL 1094223 (D.D.C. Apr. 11, 2025) ....................................................... 2

*Nat'l Cap. Presbytery v. Mayorkas*,
  567 F. Supp. 3d 230 (D.D.C. 2021) ................................................................ 14

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ....................................................................... 7, 8

*OSG Bulk Ships, Inc. v. United States*,
  132 F.3d 808 (D.C. Cir. 1998) ......................................................................... 12

*Parsons v. U.S. Department of Justice*,
  878 F.3d 162 (6th Cir. 2017) ......................................................................... 2, 3

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ....................................................................................... 9, 10

*Pharmaceutical Coalition for Patient Access v. United States*,
  126 F.4th 947 (4th Cir. 2025) .......................................................................... 13

*Sierra Club v. EPA*,
  955 F.3d 56 (D.C. Cir. 2020) ......................................................................... 7, 8

*Sierra Club v. Larson*,
  882 F.2d 128 (4th Cir. 1989) ........................................................................... 15

*Speed Mining, Inc. v. Federal Mine Safety and Health Review Commission*,
  528 F.3d 310 (4th Cir. 2008) ............................................................... 13, 14, 15

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) ...................................................................... 2, 3, 4

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
  578 U.S. 590 (2016) .......................................................................................... 4

*United States v. Texas*,
  599 U.S. 670 (2023) ....................................................................... 11, 13, 14, 15

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ......................................................................................... 11

**STATUTES**

5 U.S.C. § 704 ..................................................................................................... 14

8 U.S.C. § 1357 ............................................................................................................. 15

42 U.S.C. § 2000bb-1 .................................................................................................... 14

**REGULATIONS**

8 C.F.R. § 287.8 ........................................................................................................... 15

## INTRODUCTION

Plaintiffs' challenge to the internal guidance Defendant Department of Homeland Security (DHS) provides its immigration enforcement officers is not reviewable under the Administrative Procedure Act (APA). The Huffman Memorandum did not revoke a safe harbor from immigration enforcement because such a safe harbor did not exist in the first place. It thus does not give rise to direct and appreciable consequences and so does not constitute final agency action. Furthermore, Plaintiffs identify no statutory or regulatory provision that provides meaningful standards for the Court to assess the circumstances under which law enforcement officers may conduct immigration enforcement at sensitive locations. Given that immigration enforcement choices have traditionally been committed to agency discretion, this absence of standards governing the timing and location of enforcement actions confirms the Huffman Memorandum is committed to agency discretion by law. Accordingly, the Court should grant Defendants' Partial Motion to Dismiss.

## ARGUMENT

**I.    The Huffman Memorandum Is Not Final Agency Action Subject to Review.**

As Defendants previously explained, the Huffman Memorandum is not final agency action subject to review under the APA because it neither binds the agency nor Plaintiffs and thus does not create or withdraw a right or benefit that gives rise to direct and appreciable legal consequences. *See* Mem. in Supp. of Defs.' Partial Mot. to Dismiss at 10-18, ECF No. 78-1 (Defs.' Mem.). Plaintiffs' arguments to the contrary are unavailing.

**A.** First, Plaintiffs are mistaken that the Huffman Memorandum determined "rights or obligations" because it "marks a change in what is required of" immigration enforcement officers. *See* Pls.' Resp. in Opp.'n at 7, ECF No. 80 (Pls.' Opp.). Defendants respectfully disagree with this Court's inference that "the range of scenarios under which an immigration enforcement action

1

could occur at a place of worship is meaningfully narrower under the [Mayorkas Memorandum] than under the [Huffman Memorandum.]" *Id.* at 7-8 (quoting Mem. Op. at 28, ECF No. 60). As Plaintiffs concede, *see id*. at 9, the Mayorkas Memorandum was replete with caveats that directed immigration enforcement officers to exercise their judgment on a case-by-case basis, *see* Defs.' Mem. at 13-14. The memorandum also made clear that neither the agency's nor its employees' statutory authority was limited and that it "may not be relied upon to create any right or benefit." JR Ex. 20, PYM-000191-92. These caveats and statements render the Mayorkas Memorandum a non-binding general statement of policy. *See* Defs.' Mem. at 13-15. The same is true of the Huffman Memorandum. It "reflects only a modest change in . . . internal guidance[,]" *Mennonite Church USA v. U.S. DHS*, 2025 WL 1094223, at *4 (D.D.C. Apr. 11, 2025) (citation omitted), that does not, as Plaintiffs' contend, constitute an "attendant determination of obligations." Pls.' Opp. at 8; *see also Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) (a general statement of policy is not binding on the public or agency and the agency "retains the discretion and the authority to change its position"); *Cohen v. United States*, 578 F.3d 1, 6 (D.C. Cir. 2009) (a general statement of policy "is not a final agency action" (citations omitted)).

Plaintiffs' reliance on *Doe v. Tenenbaum*, 127 F. Supp. 3d 426 (D. Md. 2012), *Parsons v. U.S. Department of Justice*, 878 F.3d 162, 167 (6th Cir. 2017), and *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019), is misplaced. In *Doe*, the court found that the agency had a "statutory and regulatory obligation to determine, through informal adjudication, whether to publish [a] report." 127 F. Supp. 3d at 461. Here, neither the Immigration and Nationality Act (INA) nor DHS regulations impose an obligation to pursue or refrain from pursuing an enforcement action in or near a sensitive location. In *Parsons*, the Sixth Circuit concluded that the FBI's gang designation in a Congressionally mandated annual report did "not . . . determine legal rights or obligations"

2

because the report did not require law enforcement officials to take action with respect to the designations; thus, no legal consequences flowed from the report. 878 F.3d at 169-70. The Mayorkas and Huffman Memoranda likewise do not require immigration enforcement officers to take or refrain from taking enforcement actions in or near sensitive locations. And in *EEOC*, the Fifth Circuit held that the agency's guidance for employers' use of criminal records constituted final agency action because it withdrew the agency's employees' discretion by requiring the use of a particular analytical method for conducting investigations, forbidding staff from considering certain evidence and dictating enforcement decisions. 933 F.3d at 443. The guidance also informed employers how to avoid liability, creating a safe harbor. *Id.* Neither the Mayorkas nor Huffman Memorandum contain similar directives. Instead, each memorandum requires the exercise of individualized judgment by law enforcement officers in fact-specific situations and expressly states that it does not create any right or benefit. *See* Defs.' Mem. at 12-16.

Second, Plaintiffs are also mistaken that legal consequences flow from the Huffman Memorandum because it "revoked the safe harbor for protected areas that existed under" the Mayorkas Memorandum. Pls.' Opp. at 8. Contrary to Plaintiffs' assertion, the Mayorkas Memorandum did not create a safe harbor. *See* Defs.' Mem. at 12-15. Plaintiffs identify no mandatory language in the memorandum that supports their position. *See* Pls.' Opp. at 9. Nor do they identify any authority to support their assertion that a guidance document that neither compels nor prohibits certain conduct from agency employees and requires "some degree of discretionary decision-making," *id.*, creates a safe harbor. *See id.* To the contrary, Plaintiffs' cases make clear that an action is binding on both an agency and regulated entities, and thus creates a safe harbor, when it includes "mandatory words like 'will'" and "does not include the classic 'weasel words' through which agencies try . . . to reserve discretion for themselves." *Cohen*, 578 F.3d at 7; *see*

*also EEOC*, 933 F.3d at 443 (guidance binding on agency because it "indicates that it binds . . . staff to an analytical method" for conducting investigations, withdraws discretion with respect to "the use of certain evidence" and leaves "no room" for "staff *not* to issue" enforcement referrals). Indeed, the Supreme Court has held that it is the "definitive nature" of agency action that creates a safe harbor. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, *Inc.*, 578 U.S. 590, 598-99 (2016). The Mayorkas Memorandum does not definitively prohibit immigration enforcement actions in or near sensitive locations. Such actions are authorized, consistent with the agency's and its officers' statutory authority, with supervisory approval regardless of the presence of exigent circumstances. JR Ex. 20, PYM-000191.

Because the Mayorkas Memorandum did not create a safe harbor, the Huffman Memorandum did not revoke one. Nor does the Huffman Memorandum leave Plaintiffs "exposed to immigration-enforcement activities according to the whims of individual ICE agents." Pls.' Opp. at 9. The Huffman Memorandum expressly authorizes agency components "to issue further guidance to assist officers in exercising appropriate enforcement discretion." JR Ex. 43, PYM-000574. ICE issued such guidance, which directs officers to obtain supervisory authorization before conducting enforcement actions in or near sensitive locations. JR Ex. 55, PYM-000669-70. Accordingly, no legal consequences flow from the Huffman Memorandum.

**B.** Plaintiffs' remaining arguments are equally unpersuasive. At the outset, Plaintiffs contend that the "reviewability" of the Mayorkas Memorandum is not relevant because they "do not challenge" the memorandum. Pls.' Opp. at 9. But, as Plaintiffs acknowledge, whether the Huffman Memorandum revoked a safe harbor is predicated on whether the Mayorkas Memorandum created a safe harbor in the first instance. *See id.* Plaintiffs' contention is, therefore, beside the point.

**1.** Plaintiffs' argument that finality does not require the challenged agency action to directly impact them ignores binding precedent. *See* Pls.' Opp. at 10. It is well-settled that agency action that "has no direct regulatory effect on [a] plaintiff[]" does not satisfy the second prong of the finality test. *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 858 (4th Cir. 2002); *City of New York v U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (limiting review of agency action to only those acts that "determin[e] rights and obligations . . . ensures that judicial review" is "properly directed at the effect that agency conduct has on private parties" (citation omitted)); *see also Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 152 (1967) (agency action is final where the "impact of the regulations upon the petitioners is sufficiently direct and immediate").

The district court decision in *Doe* does not counsel otherwise. Although the court opined that "agency action does not automatically turn on the presence of legal consequences to the plaintiff[,]" 127 F. Supp. 3d at 461, the court went on to find that the action at issue was reviewable because it directly affected the plaintiff, *id.* at 462. The court examined *Flue-Cured* and found it to be "inapposite" because *Doe* "involve[d] a statute spawning a regulatory scheme by which the [agency] determines statutorily created rights[.]" *Id.* at 463. The court further distinguished *Flue-Cured* by noting "that the research report at issue in *Flue-Cured* was "generalized and informational in nature" whereas the incident report before the court was "individualized and accusatory." *Id.* Here, Plaintiffs do not contend, nor can they, that the Huffman Memorandum revoked a statutorily created safe harbor. Nor does the memorandum "specifically target[] . . . [P]laintiffs[,]" their members, or their attendees. *Id.* The memorandum does not, therefore, "carr[y] legal consequences for Plaintiffs and their members and attendees." Pls.' Opp. at 10.

**2.** Plaintiffs attempt to sidestep the long-established principle that the legal "consequences complained of by [a] plaintiff[]" do not satisfy the second prong of the finality test when they

"stem from independent actions taken by third parties[,]" *Flue-Cured*, 313 F.3d at 860, by arguing that they rely on the Huffman Memorandum's impact on "DHS and its employees" to satisfy the prong. *See* Pls.' Opp. at 12. But as discussed above, to satisfy this prong the challenged action must directly impact *Plaintiffs*. *See supra* I.B.1. Plaintiffs also insist, without explanation, that "there are direct effects" on them. *Id*. Defendants assume Plaintiffs are referencing their claim that the Huffman Memorandum "imped[es] their ability to gather with fellow congregants, including immigrants, for communal religious worship." *Id.* at 5. But, as Plaintiffs concede, this impact is the result of the fear of independent third actors—"[p]eople, regardless of their immigration status" choosing to not participate. *Id.* at 1; *see also id.* at 12 (acknowledging reliance on the downstream consequences to immigrant worshippers). Plaintiffs cannot satisfy the second prong of the finality test by "simply identify[ing] a governmental action that ultimately affected them through the 'independent responses and choices of third parties," or mere "coercive pressures." *City of New York*, 913 F.3d at 431 (quoting *Flue-Cured*, 313 F.3d at 861). "[S]uch an indirect impact does not transform the agency's conduct into final agency action under the APA." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004).

**3.** Plaintiffs argue that the Mayorkas Memorandum's retention of discretion for immigration enforcement officers does not mean that either the Mayorkas or the Huffman Memorandum do not "amount to final agency action." Pls.' Opp. at 12; *see also id.* at 9. This argument, however, fails to acknowledge that guidance documents that contain no mandatory language and are replete with caveats do not bind either the agency or regulated parties and thus are not final agency action. *See supra* I.A.

Plaintiffs' attempts to refute Defendants' arguments fall flat. Plaintiffs are correct that *Holbrook v. Tennessee Valley Authority*, 48 F.4th 282 (4th Cir. 2022), addressed whether an action

was committed to agency discretion. But Defendants cited the portion of the decision assessing whether a statutory provision was a general policy statement—a discussion that is directly relevant to whether the Mayorkas and Huffman Memoranda are binding on DHS or regulated parties. *See* Defs.' Mem. at 14 (citing *Holbrook*, 48 F.4th at 294). The same is true with respect to *Chen Zhou Chai v. Carroll*, 48 F.3d 1331 (4th Cir. 1995). There, the court analyzed whether an agency action was subject to notice-and-comment. *Id.* at 1340. As part of that discussion, the Fourth Circuit addressed general statements of policy, and it is in that context that Defendants relied on the Fourth Circuit's analysis. *See* Defs.' Mem. at 15 (citing *Chen Zhou Chai*, 48 F.3d at 1341).

Plaintiffs' discussion of *Sierra Club v. EPA*, 955 F.3d 56 (D.C. Cir. 2020), also misses the mark. *Sierra Club* simply "reiterate[s] the proper test for finality" when evaluating guidance documents. *Id.* at 61; *see also id.* at 63 (setting forth three-factor test). Consideration of the factors for determining the finality of a guidance document includes an assessment of whether the agency and its employees retain discretion. *Id.* at 64. In any event, the fact that the guidance document in *Sierra Club* was directed to a State as opposed to an agency employee, *see* Pls.' Opp. at 13, is of no moment. The factors used to assess whether a guidance document constitutes final agency action are the same in both instances. Indeed, the court's analysis was predicated on *Hawkes*, one of the primary cases relied on by Plaintiffs. *See Sierra Club*, 955 F.3d at 63.

**4.** It is also correct that "boilerplate language . . . does not prevent [a] document from having 'legal consequences.'" Pls.' Opp. at 13-14 (quoting *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022-23 (D.C. Cir. 2000)).  Plaintiffs fail to mention, however, that the court in *Appalachian Power* determined the agency's "boilerplate" language was not dispositive after "examin[ing] the document as a whole." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252-53 (D.C. Cir. 2014). The court concluded that the "entire" document "from beginning to end" with

7

the exception of the boilerplate language "reads like a ukase." *Appalachian Power*, 208 F.3d at 1023. "It commands, it requires, it orders, it dictates." *Id.* Neither the Mayorkas nor the Huffman Memorandum includes such mandatory language commanding DHS and its officers to take or refrain from taking enforcement actions in or near sensitive locations. Instead, the Mayorkas Memorandum is "riddled with caveats," *Ass'n of Flight Attendants*, 785 F.3d at 717, and the Huffman Memorandum declared bright line rules are unnecessary. Where, as here, Plaintiffs point to no evidence demonstrating that a guidance document is binding, courts will rely on the agency's pronouncement in evaluating the binding nature of the document. *See Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 228 (D.C. Cir. 2007); *accord Casa de Md. v. U.S. DHS*, 924 F.3d 684, 702 (4th Cir. 2019) (finding DACA rescission memorandum is a general statement of policy because, among other things, the memorandum, "by its terms," does not "create 'right[s] or benefit[s]' enforceable 'by any party'" (citation omitted)).

**5.** When assessing whether an agency's guidance document is final for purposes of APA review, the D.C. Circuit considers several factors, one of which is "whether the agency has applied the guidance as if it were binding on regulated parties." Defs.' Mem. at 12 (quoting *Sierra Club*, 955 F.3d at 62-63). Here, that requires assessing whether the agency exercised its enforcement authority in or near sensitive locations. *See, e.g.*, *Nat'l Mining*, 758 F.3d at 253 ("Our cases also have looked to post-guidance events to determine whether the agency has applied the guidance as if it were binding on regulated parties.").

## II.    The Huffman Memorandum Was Not Subject To Notice-And-Comment Rulemaking.

Plaintiffs' contention that the Huffman Memorandum was subject to notice and comment procedures fails for substantially the same reasons. First, it did not "effect[] a substantive change in DHS's authority" to pursue immigration enforcement actions in or near sensitive locations. *See* Pls.' Opp. at 22. Because the Mayorkas Memorandum expressly "d[id] not limit any agency's or

employee's statutory authority," JR Ex. 20, PYM—000191, and did not offer an interpretation of the INA, the Huffman Memorandum does not represent a "substantive change" in DHS's authority to undertake immigration enforcement actions in or near sensitive locations.

Indeed, like the DACA Rescission Memo at issue in *Casa de Maryland*, the Huffman Memorandum is a general statement of policy, and thus not subject to notice and comment under the APA. The DACA Rescission Memo was a general statement of policy because it "doesn't curtail the Department's discretion to make deferred action available on a case-by-case or ad hoc basis." 924 F.3d at 702. "Nor does the Memo, by its terms, create 'right[s] or benefit[s]' enforceable 'by any party'" or "bind subsequent Secretaries" from "implementing other deferred action policies in the future." *Id.* (citation omitted). Similarly, the Huffman Memorandum authorizes immigration enforcement officers to pursue or forbear enforcement actions in or near sensitive locations on a case-by-case basis. JR Ex. 43, PYM-000574. The Huffman Memorandum plainly states that it does not "create any right or benefit . . . enforceable at law by any party" and it does not bind subsequent Secretaries from issuing further guidance. *See id.* Thus, Plaintiffs' arguments to the contrary are without merit. *See* Pls.' Opp. at 22 (referencing previous arguments).

Plaintiffs' contention that the Mayorkas Memorandum is irrelevant to the issue of whether the Huffman Memorandum is procedurally infirm ignores Fourth Circuit precedent. *See* Defs.' Mem. at 19 (citing *Chen Zhou Chai*, 48 F.3d at 1341 n.9). It is also in tension with Plaintiffs' position that the memorandum created a safe harbor. Assuming *arguendo* that the Mayorkas Memorandum was lawful as Plaintiffs urge, the Huffman Memorandum was not required to go through notice and comment because the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). An agency's decision to change its position does

not subject the agency's new decision to a higher procedural standard than the initial policy. *See id.* ("Because an agency is not required to use notice-and-comment procedures to issue an initial interpretative rule, it is also not required to use those procedures when it amends or repeals that interpretative rule.").

### III.    Immigration Enforcement Is Committed To Agency Discretion By Law.

As Defendants have explained, Defs.' Mem. at 19-24, the Huffman Memorandum is a quintessential enforcement decision of the sort traditionally "committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). It is therefore unreviewable absent a statute "circumscribing [the] agency's power" to pursue enforcement of the Nation's immigration laws. *Id.* at 833. Plaintiffs do not claim that the INA restricts Defendants' authority to revoke the Mayorkas Memorandum. Instead, they urge that the Huffman Memorandum's recission of the Mayorkas Memorandum is nevertheless reviewable because the Huffman Memorandum is a general policy that authorizes "enforcement on a much broader basis." Pls.' Opp. at 16.  Plaintiffs' arguments are without merit.

**A.** Plaintiffs principally attempt to distinguish the Huffman Memorandum from the type of decision at issue in *Heckler* on the ground that the memorandum is a general enforcement policy rather than an individual enforcement decision. But *Heckler* itself concerned a categorical enforcement policy. Although the FDA's decision rejected a request by individual inmates, it did so by categorically stating that the FDA's jurisdiction over legal injection drugs used by State penal systems is unclear, 470 U.S. at 824, and, regardless, it would "decline, as a matter of enforcement discretion, to pursue supplies of drugs under State control that will be used for execution by lethal injection[,]" *id.* at 841 (Marshall, J., concurring). Indeed, none of the relief that the inmates sought was specific to their cases; they sought system-wide relief. *See id.* at 824

(requesting FDA to "adopt procedures for seizing the drugs from state prisons"). That forecloses Plaintiffs' contention that *Heckler* is limited to individual enforcement determinations.

Further, the Supreme Court held, with respect to making enforcement decisions, that the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id*. at 831-32. The Court also observed that "[s]imilar concerns animate the principle of administrative law that courts generally will defer" to the "procedures it adopts for implementing" the statute it is charged with administering. *Id.* at 832 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)). The "proper ordering" of an agency's "priorities" and the adoption of procedures for implementing a statute implicate general policies, not individual decisions. To the extent any doubt might have existed about the applicability of *Heckler* to an agency's general enforcement policy, those doubts were dispelled by the Supreme Court in *United States v. Texas*, 599 U.S. 670 (2023), which similarly involved a challenge to a DHS immigration enforcement guidance memorandum. There, the Court found that the "Executive Branch must balance many factors when devising arrest and prosecution *policies*" given both "resource constraints" and "regularly changing public-safety and public-welfare needs[.]" *Id.* at 681 (emphasis added).

Plaintiffs are mistaken that an agency's enforcement policy is reviewable simply because the agency "consciously and expressly adopt[s] a general policy[.]" Pls.' Opp. at 15 (quoting *Heckler*, 470 U.S. at 833 n.4). The Supreme Court cabined this dicta to "'a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." 470 U.S. at 833 n.4 (quoting *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973)). Plaintiffs do not argue that the Huffman Memorandum "amount[s] to an abdication of its statutory responsibilities" to enforce the Nation's immigration laws.

Plaintiffs also err in relying on *Casa de Maryland*, 924 F.3d 684, and *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808 (D.C. Cir. 1998), *see* Pls.' Opp. at 16, to distinguish between "single shot" enforcement decisions and general policies. Those cases held that a "general enforcement policy based on the agency's *legal interpretation* is subject to review." *Casa de Md.*, 924 F.3d at 699 (citing *OSG Bulk Ships*, 132 F.3d at 811-12) (emphasis added). As previously explained, neither the Mayorkas nor the Huffman Memorandum offer any legal interpretation of the INA or relevant statutes or regulations. *See* Defs.' Mem. at 24. In any event, lower-court decisions that may be read to authorize review of an enforcement policy itself "simply cannot be reconciled with [*Heckler*]." *Casa de Md.*, 924 F.3d at 713 (Richardson, J. dissenting in relevant part).

Plaintiffs cannot escape *Heckler* by urging that it "involved an agency's *refusal* to carry out an enforcement action[.]" Pls. Opp. at 16. The Huffman Memorandum does not "coerc[e]" Plaintiffs or their members, *id.* at 17; it imposes no obligations, prohibitions, or restrictions on regulated entities or persons. *See* JR 43, PYM-000574. Nor does the Huffman Memorandum "provide[] a focus for judicial review[.]" Pls.' Opp. at 17 (citation omitted). Plaintiffs' reliance on *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), to argue the contrary is misplaced. There, the Supreme Court held that DACA was "more than a non-enforcement policy" and thus its rescission was not a matter committed to agency discretion. *Id.* at 18-19. The Court reasoned that the DACA Memorandum "effectively" established an adjudicative process which "created a program for conferring affirmative immigration relief" with "attendant" benefits, such as eligibility for Social Security and Medicare. *Id.* Accordingly, the rescission of DACA "provide[d] a focus for judicial review." *Id.* at 17-18 (citation omitted). Here, in contrast, the Mayorkas and Huffman Memoranda are merely internal enforcement guidance documents for law enforcement officers. The Mayorkas Memorandum did not create a similar

12

adjudicatory program "conferring affirmative immigration relief" because, as discussed above, it did not create a safe harbor from enforcement actions for sensitive locations. *See supra* at I.A. Nor did it establish a process by which entities such as places of worship could apply to receive a safe harbor. *See* JR 43, PYM-000574.

Finally, Plaintiffs are mistaken that the additional Fourth Circuit decisions Defendants cited in their opening memorandum "reinforce" their assertion that the Huffman Memorandum is judicially reviewable. *See* Pls.' Opp. at 17-18. In *Speed Mining, Inc. v. Federal Mine Safety and Health Review Commission*, 528 F.3d 310 (4th Cir. 2008), the Fourth Circuit principally based its conclusion that the agency's decision to pursue enforcement of the Federal Mine Safety and Health Act against one mine operator but not another on the fact that the Act was "silent" on the issue of how to apportion liability and thus provided "no meaningful standard for review." *Id.* at 317. The Fourth Circuit made clear that the factors an agency balances in making non-enforcement decisions discussed in *Heckler* are equally relevant when an agency makes enforcement decisions. *Id.* The Fourth Circuit reaffirmed this holding in *Pharmaceutical Coalition for Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025). The Fourth Circuit's recognition that an agency must balance a number of factors when making a decision to enforce is consistent with the Supreme Court's recent holding in *Texas* that the "Executive Branch must balance many factors when devising arrest and prosecution policies" in light of both "resource constraints" and ever-changing "public-safety and public-welfare needs[.]" 599 U.S. at 680.

**B.** Review of Counts IV and V of Plaintiffs' Amended Complaint is foreclosed regardless of whether this Court determines that the internal enforcement guidance set forth in the Huffman Memorandum is committed to agency discretion by law. The APA provides a cause of action only for "[a]gency action made reviewable by statute and final agency action for which there is no other

adequate remedy in a court[.]" *Angelex Ltd. v. United States*, 723 F.3d 500, 505-06 (4th Cir. 2013) (quoting 5 U.S.C. § 704). The Huffman Memorandum does not constitute final agency action; therefore, Plaintiffs' claims that the memorandum is contrary to a constitutional right and in excess of statutory authority are not subject to review. *See supra* at I.A-B.

Moreover, Plaintiffs' claim that the memorandum is contrary to a constitutional right is duplicative of their First Amendment claim that the memorandum "chills [their] rights to the Freedom of Expressive Association." *Compare* Am. Compl. ¶ 159 (Count IV), ECF No. 28 *with id.* ¶¶ 136-45 (Count II). This Court found that Plaintiffs are likely to succeed on their First Amendment claim. *See* Mem. Op. at 33-45. Accordingly, Plaintiffs have an adequate alternative remedy for their constitutional claim. *See* 5 U.S.C. § 704. The same holds true for Plaintiffs' claim that the Huffman Memorandum is in excess of statutory authority, which is predicated not on the INA but on the Religious Freedom Reformation Act (RFRA). *Compare* Am. Compl. ¶¶ 168-69 (Count V) *with id.* ¶¶ 116-34 (Count I). "RFRA provides an independent cause of action that allows for 'appropriate relief against a government'" *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 247 (D.D.C. 2021) (quoting 42 U.S.C. § 2000bb-1(c)). As such, "Plaintiffs lack a cause of action under the APA" because they have an adequate alternative remedy. *Id.*; *see also* 5 U.S.C. §704; Mem. Op. at 53 (concluding Plaintiffs are likely to succeed on their RFRA claim). Plaintiffs' arguments are thus meritless.

**C.** Tellingly, Plaintiffs do not dispute that the Executive's enforcement choices are an area in which "the courts have traditionally been most reluctant to interfere." *Speed Mining*, 528 F.3d at 318 (citation omitted); *see also* Pls.' Opp. at 20. Nor can they, as the Supreme Court recently confirmed this principle in *Texas*. 599 U.S. at 679-80 ("decisions about enforcement of 'the Nation's criminal laws' lie within the 'special province of the Executive'" and this "principle . . .

14

extends to the immigration context, where the Court has stressed that the Executive's enforcement discretion implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" 599 U.S. at 670 (citations omitted). This Court's finding that the "general language about Article II authority" in *Texas* did not "prevent Plaintiffs from asserting a cognizable injury" was made in the context of the Court's analysis of Plaintiffs' standing to bring its First Amendment and RFRA claims. *See* Mem. Op. at 22. The issue of whether Plaintiffs' APA claims are reviewable was not before the Court at the preliminary injunction stage.

**D.** Finally, Plaintiffs err in asserting that 8 U.S.C. § 1357 and 8 C.F.R. § 287.8(f) provide the "law to apply" to Plaintiffs' APA claims. Pls.' Opp. at 21. Neither § 1357 nor § 287.8(f) "outline (even in the broadest brushstrokes) the parameters for" conducting enforcement actions in or near sensitive locations. *Angelex Ltd.*, 723 F.3d at 507 (citation omitted). As Defendants noted in their opening memorandum, § 1357 limits when immigration enforcement officers may enter a farm or similar agricultural operation for investigative purposes but does not address whether, when or under what circumstances officers may enter or approach sensitive locations. Defs.' Mem. at 21. The regulation at 8 C.F.R. § 287.8(f) similarly limits enforcement officers from entering the non-public areas of a business, residence, farm, or agricultural area but does not address sensitive locations such as places of worship. Because these provisions are "entirely silent on this point[,]" neither provision provides meaningful standards by which to review the Huffman Memorandum. *Speed Mining*, 528 F.3d at 317; *see also Sierra Club v. Larson*, 882 F.2d 128, 132-33 (4th Cir. 1989) (holding that when a statute is silent "there is no law to apply").

## <u>CONCLUSION</u>

For these reasons and the reasons set forth in Defendants' opening memorandum, the Court should dismiss Plaintiffs' APA claims (Counts III-VI).

Dated: May 15, 2025                    Respectfully submitted,

                                       YAAKOV M. ROTH
                                       Acting Assistant Attorney General

                                       ALEXANDER K. HAAS
                                       Branch Director

                                       ANDREW I. WARDEN
                                       Assistant Branch Director

                                       /s/ *Kristina A. Wolfe*
                                       KRISTINA A. WOLFE (VA Bar No. 71570)
                                       KARIMA ORTOLANO (MA Bar No. 707575)
                                       United States Department of Justice
                                       Civil Division
                                       Federal Programs Branch
                                       1100 L Street, NW
                                       Washington, D.C. 20530
                                       Tel: 202-353-4519
                                       Fax: 202-616-8470
                                       Email:  Kristina.Wolfe@usdoj.gov